IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

GREGORY L. BABB,                          )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )        No. 07-CV-24-TCK-SAJ
                                          )
NORMA EAGLETON,                           )
EAGLETON, EAGLETON &                      )
HARRISON, Inc.,                           )
CHARLES F. MCGOWAN,                       )
JENNIFER D. JONES, and                    )
MARK JONES,                               )
                                          )
            Defendants.                   )

## OPINION AND ORDER

Before the Court are the Motion to Dismiss of Defendants Mark and Jennifer Jones (Doc. 40); Motion to Dismiss of Defendant Charles McGowen (Doc. 25); and Defendants Norma Eagleton and Eagleton, Eagleton, & Harrison, Inc.'s Motion to Dismiss (Doc. 34).

## I.    Factual Background

Plaintiff Gregory L. Babb  ("Father") and Defendant Jennifer Jones ("Mother") are the natural parents of twin boys ("Minor Children").  Father and Mother are divorced, and Mother is remarried to Defendant Mark Jones ("Stepfather").  On November 25, 2002, Tulsa County District Judge Terry Bitting approved a Joint Custody Plan and appointed a "Parenting Coordinator" in Father and Mother's divorce proceeding, Case No. FD 97-4248 ("Domestic Case").  On June 24, 2005, Mother filed a Motion to Modify the Joint Custody Plan in the Domestic Case.  In late 2005 and continuing through early 2006, Mother intercepted and recorded at least sixteen (16) telephone conversations between Father and Minor Children.  Mother "set up a recording device on her own

1

telephone and intercepted the conversations between Father and the Minor Children." (Compl. ¶ 16.)   According to the Complaint, Mother recorded these conversations "to bolster her Motion to Modify the Joint Custody Plan." (*Id.* ¶ 14.)   Mother disclosed the contents of the intercepted communications to the attorney representing her in the Domestic Case, Defendant Norma Eagleton ("Attorney") of the law firm of Eagleton, Eagleton, & Harris ("Law Firm").   Mother also disclosed the contents of the intercepted communications to the appointed Parenting Coordinator, Defendant Charles McGowen ("McGowen").

On January 9, 2007, Father filed the instant lawsuit against Mother, Stepfather, Attorney, Law Firm, and McGowen, alleging that each Defendant violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III").   In Counts I and II, Father alleges that Mother and Stepfather violated Title III by intercepting and recording the conversations and disclosing their contents to third parties.   In Count III, Father alleges that Attorney violated Title III by utilizing and disclosing the contents of the intercepted communications to McGowen and by utilizing and disclosing the contents of the intercepted communications during a presentation to Judge Bitting in the Domestic Case.   In Count IV, Father alleges that Law Firm is liable for the acts of Attorney because Attorney was acting as an agent of the Law Firm at the time of the alleged violations.   In Count V, Father alleges McGowen violated Title III by disseminating and using the contents of the intercepted communications in correspondence to Father and Mother and their counsel in the Domestic Case.   All Defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Father cannot state a claim upon which relief may be granted.

## II.     Mother and Stepfather's Motion to Dismiss

### A.     Standard

Mother and Stepfather submitted two exhibits in support of their Motion to Dismiss: (1) Joint Custody Plan entered November 22, 2002 in the Domestic Case (Ex. A. to Jennifer and Mark Jones' Mot. to Dismiss); and (2) a letter dated June 5, 2006 from McGowen to counsel for Father in the Domestic Case and Attorney.  (Ex. B to Jennifer and Mark Jones' Mot. to Dismiss).  In support of his response, Father submitted one exhibit:  the Motion to Modify Joint Custody Plan filed June 24, 2005 (Ex. A. to Pl.'s Resp. to Jennifer and Mark Jones' Mot. to Dismiss).  The parties agree that submission of these exhibits does not convert the motion to one for summary judgment and urge the Court to apply the motion to dismiss standard contained in Federal Rule of Civil Procedure 12(b)(6).  As a general matter, a motion to dismiss should be converted to a summary judgment motion if a party submits materials outside the pleadings. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1215 (10th Cir. 2007). Notwithstanding this general rule, a district court "may consider documents referred to in the Complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (quotation omitted).  All exhibits submitted are referenced in the Complaint.  (*See* Compl. ¶ 11 (referencing Joint Custody Plan"); ¶ 14 (referencing Motion to Modify Joint Custody Plan), and ¶ 47 (referencing correspondence from McGowen discussing the intercepted communications).)  Further, the parties do not dispute the content or authenticity of these documents.  Accordingly, the Court need not convert the motion to one for summary judgment.

For a motion made under Rule 12(b)(6) to succeed, a defendant must show that, as a matter of law, a plaintiff has failed to state a claim upon which relief can be granted.  It must appear

"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In evaluating a motion to dismiss, a court must accept all well-pled allegations as true and indulge all reasonable references in favor of plaintiff.  *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997); *Weatherford v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir. 1987).  "'When a federal court reviews the sufficiency of a complaint . . . its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court construes Mother and Stepfather's brief as making three legal arguments in support of dismissal: (1) they are entitled to "parental immunity" from suit because they are permitted to intercept conversations to which their minor children are a party;[1]  (2) any alleged interceptions do not constitute violations of Title III because they are excepted by the "extension phone exemption" in 18 U.S.C. § 2510(5)(a)(1) ("Extension Phone Exemption"); and (3) Mother vicariously consented to the recording on behalf of the Minor Children, such that any alleged interceptions are covered by 18 U.S.C. § 2511(2)(d), which excepts interceptions where one of the parties to the conversation provides consent ("Consent Exception").

---

[1]     This argument is not explicit in the briefs but is instead folded into the argument regarding the Extension Phone Exemption contained in 18 U.S.C. § 2510(5)(a)(1).  However, the Court finds it analytically necessary to address these as two separate issues.

**B.      Parental Immunity**

In general, Title III prohibits "non-consensual recordings of private conversations, subject to certain specified exceptions, and authorize[s] civil remedies on behalf of those who suffer violations of the statutory provisions." *Glazner v. Glazner*, 347 F.3d 1212, 1214 (11th Cir. 2003). Under Title III, "criminal liability attaches and a federal civil cause of action arises when a person intentionally intercepts a wire or electronic communication or intentionally discloses the contents of the interception." *Deal v. Spears*, 980 F.2d 1153, 1156 (8th Cir. 1992); 18 U.S.C. § 2511(1)(a)-(e).[2] A successful plaintiff in a civil Title III case may recover actual damages plus any profits made

_____

[2]     The liability provision of Title III states:

(1) Except as otherwise specifically provided in this chapter any person who--
(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication [under certain circumstances] . . .
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or
(e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)-(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation, shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

by the violator.  *Deal*, 980 F.2d at 1156.  If statutory damages will result in a larger recovery than actual damages, the violator must pay "the greater of $100 a day for each day of violation or $10,000."  18 U.S.C. § 2520(c)(2)(B).  Father in this case seeks statutory damages in the amount of $10,000 per violation and seeks to hold all Defendants jointly and severally liable.

Mother and Stepfather rely on *Newcomb v. Ingle*, 944 F.2d 1534, 1535 (10th Cir. 1991), for the proposition that Title III cannot apply to any alleged interceptions in this case because Mother, a custodial parent, intercepted the Minor Children's conversations within their family home. Although the argument is couched in terms of the Extension Phone Exemption, the argument does not make reference to any facts regarding the intercepting equipment used in the course of Mother's interception or the circumstances leading to or surrounding Mother's interception.  As explained below, these are necessary elements of the Extension Phone Exemption analysis.  The Court finds that Mother and Stepfather's argument based on *Newcomb* is properly construed as one for absolute parental immunity based simply on the identity of the recorder, the identity of one of the recordees, and the location of the recording.  Father argues that Tenth Circuit cases subsequent to *Newcomb* have limited *Newcomb* to its precise factual scenario – *i.e.*, to situations in which the minor child (rather than the party at the other end of the recorded conversation) has brought suit against the recording parent under Title III.  For the reasons explained below, the Court finds that *Newcomb* does not shield Mother and/or Stepfather from Title III liability in this case.

---

18 U.S.C. § 2511.  Father has alleged violation of § 2511 but has not specified which provision is at issue with respect to each Defendant.  It appears Father seeks to hold Mother and Stepfather liable for interception, use, and disclosure pursuant to §§ 2511(a), (c), and (d), and seeks to hold Attorney, Law Firm, and McGowen liable for use and disclosure pursuant to § 2511(c) and (d).

Three Tenth Circuit decisions are relevant to the Court's analysis regarding parental immunity.[3]  In *Newcomb*, a mother, who had custody of her son, recorded a conversation between her minor son and his father within her own home without the minor's consent.  The conversations were used in criminal proceedings against the minor and the minor's father.  Upon reaching the age of majority, the son sued his mother for violations of Title III.  The court held that Title III did not apply "where a minor child sues his custodial parent for telephone interceptions made within the family home."  *Id.* at 1535 (emphasis added).[4]  Because the Tenth Circuit had not yet formally rejected the doctrine of "interspousal immunity," the *Newcomb* court felt the need to distinguish cases rejecting immunity "where spouses have [directly] tapped one another [within the family home]."  *Id.* at 1535-36.  The Tenth Circuit distinguished these cases on grounds that such tapping is "qualitatively different from a custodial parent tapping a minor child's conversations within the family home."  *Id.* at 1535-36.  Mother and Stepfather focus on this language and argue that *Newcomb* parental immunity applies.

*Newcomb* has been severely limited by two subsequent Tenth Circuit decisions.  Five weeks after deciding *Newcomb*, the Tenth Circuit decided *Heggy v. Heggy*, 944 F.2d 1537 (10th Cir. 1991).

---

[3]   Unlike the issue of "parental immunity," which requires extensive analysis of Tenth Circuit law, the issue of "interspousal immunity" has been squarely rejected by the Tenth Circuit.  *See Heggy v. Heggy*, 944 F.2d 1537, 1539 (10th Cir. 1991) (following Fourth, Sixth, and Eighth Circuits and holding that "Title III does provide a remedy for [interspousal] wiretapping").  Even if the Tenth Circuit did recognize interspousal immunity, such immunity would not apply in this case because Mother and Father are divorced and resided in separate homes at the time of the alleged interceptions.

[4]   In support of this holding, the court stated in dicta that "[t]he interception of a family member's telephone conversation by use of an extension phone in the family home is arguably permitted by a broad reading of the Extension Phone Exemption contained in 18 U.S.C. § 2510(a)(i)."  *Id.* at 1536.  This is likely why Mother and Stepfather couched their *Newcomb* argument in terms of the Extension Phone Exemption.

*Heggy* addressed interspousal immunity, which is not at issue here.   Nonetheless, *Heggy*'s discussion of *Newcomb* is critical to the Court's analysis.  In *Heggy*, a husband (who still resided with and was married to his wife) placed a recording device on an extension telephone in a barn adjacent to the marital home and recorded his wife's telephone conversations for a period of three months.  After their divorce, the wife sued the husband for violation of Title III.  A jury awarded damages to the wife totaling $215,000.  On appeal, the husband argued Title III did not apply to "interspousal wiretaps" and that the district court erred in denying his motion to dismiss on the same grounds.  The court noted the circuit split on this issue, followed the Fourth, Sixth, and Eighth Circuits, and held that "Title III does provide a remedy for [interspousal] wiretapping." *Id.* at 1539.

The *Heggy* court rejected a contrary Fifth Circuit decision, *Simpson v. Simpson*, 490 F.2d 803, 809 (5th Cir. 1974), stating that "[w]e reject not only the *Simpson* court's method of statutory analysis but also its interpretation of the legislative history." *Id.*  at 1540.  The rejection of *Simpson*'s reasoning is significant because the *Newcomb* court relied heavily on *Simpson* in reaching its decision.[5]  Contrary to the Fifth Circuit, the Tenth Circuit reasoned "that the legislative history evinces a congressional awareness of the widespread use of eavesdropping in domestic relations cases and an intent to prohibit such eavesdropping." *Id.*

Despite its disagreement with *Simpson*'s reasoning, the *Heggy* court did not overrule *Newcomb*. Instead, the Tenth Circuit factually distinguished *Newcomb* in a footnote:

---

[5]    For example the *Newcomb* court quoted *Simpson*'s reasoning that the Extension Phone Exemption was indicative of Congress's intent to "'abjure form deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within a home vis a vis each other.'"  *Id.* (quoting *Simpson*).

> This criticism of *Simpson* is distinguishable from this court's previous citation to
> *Simpson* with approval in *finding parental immunity* from civil claims under Title III
> in *Newcomb*, 944 F.2d at 1536 (quoting *Simpson*, 490 F.2d at 809). In *Newcomb* this
> court placed the language from *Simpson* describing congressional intent to abstain
> from interference in the interrelationship of family members in the context of a
> House Judiciary Committee Comment *concerning the right of a father to supervise*
> *his teenage daughter. See Newcomb*, 944 F.2d at 1536 n.5.

*Id.* at 1541 n.7 (emphasis added).  This footnote limited *Newcomb*'s holding and labeled the

*Newcomb* decision as establishing a form of "parental immunity" from suit.[6]   The *Heggy* court

further implied that such parental immunity is directly tied to a parent's right to "supervise" her

children.

In another subsequent decision, *Thompson v. Dulaney*, 970 F.2d 744 (10th Cir. 1992), the

Tenth Circuit further limited *Newcomb*'s holding.  In *Thompson*, the court addressed a factual

scenario very similar to that presented here.  While a divorce proceeding was pending, a mother and

her children resided with the children's grandparents, and the father resided elsewhere.  The mother

taped several conversations between the children and their father on the grandparents' telephone line

and introduced the tapes in subsequent custody proceedings.   The father sued under Title III.  The

district court granted summary judgment to the mother, holding that Title III did not apply to any

"domestic dispute situations," thereby recognizing some form of general domestic dispute immunity.

*Id.* at 746.  At the time the district court decided the question, the Tenth Circuit had not yet issued

its opinion in *Heggy*.  On appeal, the Tenth Circuit overruled the district court's decision based on

*Heggy*'s reasoning.

---

[6]    This footnote in *Heggy* led this Court to label Mother and Stepfather's argument as
one for "parental immunity."

Because it was not the basis for the district court's decision, the Tenth Circuit did not squarely address the issue relevant to this case – whether "parental immunity" exists under Title III. In a footnote, however, the Tenth Circuit stated as follows:

> In 1991 we also decided *Newcomb v. Ingle*, 944 F.2d 1534 (10th Cir.1991), cert. denied, 502 U.S. 1044, 112 S. Ct. 903, 116 L. Ed.2d 804 (1992), in which a child sued his custodial parent under Title III for tapping his conversations within the family home while he was a minor. *Heggy* distinguished *Newcomb* by repeating *Newcomb*'s assertion that interspousal tapping is "'qualitatively different from a custodial parent tapping a minor child's conversations within the family home.'" *Heggy*, 944 F.2d at 1538 n.1 (quoting *Newcomb*, 944 F.2d at 1535). *We distinguish Newcomb as did Heggy by noting that in Newcomb it was a minor child living at home at the time of the wiretap who was complaining, whereas here, as in Heggy, it is the spouse who is complaining.*

*Id.* at 747 n.4. Again, rather than overruling *Newcomb*, the Tenth Circuit in *Thompson* further limited *Newcomb* to factual situations in which it is the *minor child* bringing suit, rather than the allegedly wronged parent or another third party to the minor child's conversation.[7]

Based on these three decisions, which are less than clear, the Court interprets Tenth Circuit law as follows. The Tenth Circuit recognizes a form of "parental immunity" from suit under Title III. *See Newcomb*, 944 F.2d at 1535; *Heggy*, 944 F.2d at 1541 n.7. However, this "parental immunity" is not absolute. Instead, such immunity is limited to situations in which (1) a minor child is a party to the recorded conversation, and (2) it is the minor child, rather than a third party, who has brought suit under Title III. *See Thompson*, 970 F.2d at 747 n.4. There may also be a third

---

[7] This conclusion in *Thompson* has been criticized. *See Scheib v. Grant*, 22 F.3d 149, 154 n.3 (7th Cir. 1994) ("In *Thompson*, the court appeared to limit the principle announced in *Newcomb* on the basis of the plaintiff's identity . . . It appears that the *Thompson* court may have misread the earlier decision in [*Heggy*]."). Unlike the Seventh Circuit, this Court is bound to follow *Thompson*, and *Thompson* clearly limits *Newcomb*'s holding to factual settings in which the minor brings suit. Otherwise, there would have been no reason that *Newcomb*'s holding should not have applied to the facts of *Thompson*, which (like the present case) involved a mother recording a conversation between her minor children and their father.

requirement that the conversations were recorded in an effort to "supervise" the minor children. *See Heggy*, 944 F.2d at 1541 n.7. Applying these principles to this case, the Court finds that neither Mother or Stepfather are entitled to "parental immunity" because it is a third party, rather than the Minor Children, who has brought suit under Title III. The Court need not address the possible third requirement, which would require analysis of Mother's motive for recording the conversations.

**C.      Extension Phone Exemption - 18 U.S.C. § 2510(5)(a)(i)**

Title III contains what has been referred to by other courts as an "extension phone exemption," *see Scheib v. Grant*, 22 F.3d 149, 152 (7th Cir. 1994), or "an exemption for business use of a telephone extension," *see Deal v. Spears*, 980 F.2d 1153, 1157 (8th Cir. 1992). The Extension Phone Exemption derives from the restrictive definition of "electronic, mechanical, or other device" set forth in § 2510:

> (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* --
> (a) *any telephone* or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service *in the ordinary course of its business* and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business . . . .

18 U.S.C. § 2510(5)(a)(i) (emphasis added). In order to be "intercepted" for purposes of Title III, a communication must be captured by an "electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (defining "intercept"). Thus, if the method of capturing the communication is excepted from the definition of "electronic, mechanical, or other device," the communication has not been "intercepted" for purposes of Title III, and no liability may attach.

11

Courts have identified two essential "elements" that must be shown in order for the Extension Phone Exemption to apply: (1) "the intercepting equipment must be furnished to the user by the phone company or connected to the phone line," and (2) "it must be used in the ordinary course of business." *See Deal*, 980 F.2d at 1157; *see also United States v. Murdock*, 63 F.3d 1391, 1396 (6th Cir. 1995); *cf. United States v. Harpel*, 493 F.2d 346, 350-51 (10th Cir. 1974) (explaining, in context of criminal case, that "interception" and "ordinary course of business" were two essential elements of the Extension Phone Exemption).   The parties did not brief the issue of whether the "intercepting equipment" used by Mother qualifies for the Extension Phone Exemption, leading the Court to believe it is undisputed that this element of the Extension Phone Exemption is met. Nonetheless, the Court will briefly address it.

Father alleges that Mother "set up a recording device on her own telephone and intercepted the conversations." (Compl. ¶ 16.)  The Tenth Circuit has held that a recording device attached to a home telephone extension, such as that alleged in this case, qualifies for the Extension Phone Exemption because it is the telephone receiver, and not the recording device, that constitutes the intercepting mechanism.  *See United States v. Harpel*, 493 F.2d 346, 350 (10th Cir. 1974); *see also Thompson*, 970 F.2d at 748 n.5 (listing possible exceptions to liability where one spouse records conversation of another spouse and including Extension Phone Exemption contained in § 2510(5)(a)(i));[8] *Newcomb*, 944 F.2d at 1536 ("The interception of a family member's telephone

_____

[8]    This footnote in *Thompson* is instructive because alleged violations of Title III involving one spouse intercepting a conversation of another spouse would most frequently occur in a manner similar to that which occurred in this case – a recording device attached to a home telephone extension.  Although mentioned by the Tenth Circuit, the Extension Phone Exemption was not raised or discussed by the district court on remand.  *See Thompson v. Dulaney*, 838 F. Supp. 1535 (D. Utah 1993).

conversations by use of an extension phone in the family home is arguably permitted by a broad reading of the exemption contained in 18 U.S.C. § 2510(5)(a)(1)."); *cf. Schreib*, 22 F.3d at 151 (addressing merits of the plaintiff's Extension Phone Exemption argument without first discussing whether "intercepting equipment" – answering machine attached to a home phone extension – qualified for the Extension Phone Exemption).  Based on this authority, the Court concludes that the "intercepting equipment" used by Mother (a recording device attached to a home telephone extension) satisfies the first element of the Extension Phone Exemption.[9]

The second element requires analysis of whether Mother "was intercepting and recording the telephone calls in the ordinary course of her business as a subscriber or user of the telephone extension."   *See Murdock*, 63 F.3d at 1396.   In the context presented – a parent recording a conversation between a minor child and a third party – this question turns largely on Mother's motivation for intercepting the calls between Minor Children and Father.   *See id.* (holding that "spying on one's spouse" does not constitute use of an extension phone in the "ordinary course of business" for purposes of Title III); *Scheib*, 63 F.3d at 154 (holding that the Extension Phone Exemption covered situations in which parents recorded "their minor child's phone conversations out of concern for the child's well-being"); *cf. Harpel*, 493 F.2d at 351-52 (holding, outside context of recording of a minor child's phone conversations, that "a telephone extension used without authorization or consent to surreptitiously record a private telephone conversation is not used in the

---

[9]    The Court notes contrary authority from other circuits.  *See United States v. Murdock*, 63 F.3d 1391, 1394 (6th Cir. 1995) (holding that mechanism used in that case – a tape recorder connected to extension phones in home – did not qualify for the § 2510(5)(a) Extension Phone Exemption) (listing Tenth Circuit as circuit reaching contrary conclusion and citing *Newcomb*); *Deal*, 980 F.2d at 1157-58 (same) ("It seems far more plausible to us that the recording device, and not the extension phone, is the instrument used to intercept the call. We do not believe the recording device falls within the statutory Extension Phone Exemption.").

'ordinary course of business'"). *But see Campbell v. Price*, 2 F. Supp. 2d 1186, 1191 (E.D. Ark. 1998) (holding that the Extension Phone Exemption applied to situations "where a parent records his child's phone conversations from a phone extension within the parent's home" without any analysis of the recording party's purpose). In *Scheib*, which presented a factual scenario nearly identical to that presented here, the court granted the defendant's motion for summary judgment and found the defendant qualified for the Extension Phone Exemption. *Id.* at 155. The court so found because the plaintiffs failed to come forward with evidence to rebut defendant's evidence tending to show the conversations were recorded out of concern for the child's well being. *Id.* at 155. Thus, the *Scheib* court's application of the Extension Phone Exemption involved an evidentiary analysis of the defendant's motive for recording the conversation.

In the Complaint, Father alleges that Mother was motivated to record the conversations for the sole purpose of bolstering her Motion to Modify Joint Custody Plan in the Domestic Case. In his briefs, Father contends Mother was not recording her children in the "ordinary course of business" or out of any concern for Minor Children's well-being. For purposes of a motion to dismiss, the Court accepts these allegations as true. Therefore, the Court cannot conclude that Mother and Stepfather qualify for the Extension Phone Exemption as a matter of law at this stage of the proceedings.

**D.      Consent Exception – 18 U.S.C. § 2511(2)(d)**

The Consent Exception in Title III provides:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication *or where one of the parties to the communication has given prior consent to such interception* unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added).  Father alleges that neither he nor Minor Children consented to the recordings.  Mother and Stepfather argue that their actions nonetheless qualify for the Consent Exception because Mother vicariously consented to the wiretap on behalf of Minor Children.

On remand from the Tenth Circuit's decision in *Thompson v. Dulaney*, 970 F.2d 744 (10th Cir. 1992), the District Court of Utah addressed a similar argument regarding vicarious consent by a parent for her children.  *See Thompson v. Dulaney*, 838 F. Supp. 1535, 1543 (D. Utah 1993) (addressing the "unique legal question of first impression on the authority of a guardian to vicariously consent to the taping of phone conversations on behalf of minor children who are both incapable of consenting and who cannot consent in fact").  The court held that "on the specific facts of this case, vicarious consent is permissible under both *Newcomb* and applicable Utah law." *Id.* at 1544.  The court held that "as long as the guardian has a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of phone conversations, vicarious consent will be permissible in order for the guardian to fulfill her statutory mandate." *Id.*  The court in *Thompson* emphasized that its holding was narrow and was

"driven by the fact that this case involved two minor children whose relationship with their mother/guardian was allegedly being undermined by their father." *Id.* n.9.

This "good faith" standard originally set forth by the District Court of Utah has been adopted by the Sixth Circuit. *See Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998) (adopting "standard set forth in district court in *Thompson*" for determining whether parent has vicariously consented for purposes of Consent Exception to Title III). The Sixth Circuit in *Pollock* further clarified that "this doctrine should not be interpreted as permitting parents to tape any conversation involving their child simply by invoking the magic words: 'I was doing it in his/her best interest.'" *Pollock*, 154 F.3d at 610; *see also Cacciarelli v. Boniface*, 737 A.2d 1170, 1171-1176 (N.J. 1999) (summarizing case law on vicarious consent for purposes of analyzing consent exception under New Jersey statute that is similar to Title III); *see generally* Note, Debra Bogosavljevic, *Can Parents Vicariously Consent to Recording a Telephone Conversation on Behalf of a Minor Child?: An Examination of the Vicarious Consent Exception Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968*, 2000 U. Ill. L. Rev. 321 (2000). Thus, the weight of authority, including a case within the Tenth Circuit, holds that a parent may vicariously consent for their child so long as that parent has "a good faith basis that is objectively reasonable for believing that it is necessary to consent on behalf of her minor children to the taping of phone conversations." *Thompson*, 838 F. Supp. at 1544. *But see Williams v. Williams*, 581 N.W.2d 777, 781 (Mich. Ct. App. 1998) (refusing to recognize doctrine of "vicarious consent" in relation to Title III's Consent Exception).

In this case, Father alleges the communications were intercepted for self-serving reasons and not based on a "good-faith belief" that recording was necessary to protect the interests of the Minor Children. For purposes of a motion to dismiss, the Court accepts these allegations as true.

16

Accordingly, the Court rejects the argument that Father has failed to state a claim based on application of the Consent Exception.  Instead, this is a question that must be addressed at summary judgment or trial.  In addition, at the time of the interceptions, Mother and Father were operating under a Joint Custody Plan that required the parents to share decisions and to share physical custody. The parties did not cite case law addressing what effect, if any, such a Joint Custody Plan has on one parent's ability to provide vicarious consent for purposes of the Consent Exception.  However, the fact that Mother and Father shared custody of Minor Children does not seem to weigh in favor of a dismissal premised on the Consent Exception.

### III.    Attorney and Law Firm's Motion to Dismiss

#### A.    Standard

Attorney and Law Firm submitted no evidence beyond the pleadings in support of their motion to dismiss, and Father submitted no evidence in his response.  Accordingly, the Rule 12(b)(6) standard set forth above applies to the motion.[10]

#### B.    Parental Immunity/Extension Phone Exemption/Consent Exception

In the first two sections of their brief, Attorney and Law Firm argued that Father failed to state a claim against Mother or Stepfather and therefore failed to state a claim for liability against them.  The court agrees that if no unlawful interception initially occurred, there can be no liability for subsequent use or disclosure of the interceptions by Attorney and Law Firm.  *See Newcomb v. Ingle*, 944 F.2d 1534, 1535 (10th Cir. 1991) (holding that, because original interception was not

---

[10]   The Court is perplexed by Attorney and Law Firm's statement that "matters beyond the pleadings are referenced in this motion."  (Eagleton and Eagleton, Eagleton, & Harrison's Mot. to Dismiss 3.)  To the Court's knowledge, there were no exhibits submitted with respect to such motion.

unlawful, subsequent use by prosecutor could not be found unlawful); *Simmons v. Sw. Bell Tel. Co.*, 452 F. Supp. 392, 397 (W.D. Okla. 1978) (holding that, because interception of conversation was lawful, court could not find Title III violation based on "disclosure" of the conversation).  However, Attorney and Law Firm raised the same three arguments as Mother and Stepfather – parental immunity, the Extension Phone Exemption, and the Consent Exception.  For the same reasons explained above, the Court rejects these arguments.  Therefore, Attorney and Law Firm are not relieved of liability based on Father's failure to state a claim against Mother and/or Stepfather.

### C.    Litigation Privilege

Attorney raised the additional argument that Father failed to state a claim against her because any alleged actions of Attorney qualify for a "litigation privilege."  Attorney relied primarily on state law cases holding that attorneys cannot be held liable for the tort of defamation when the alleged defamatory statements are made in the course of judicial proceedings.  *See, e.g., Kirschstein v. Haynes*, 788 P.2d 941, 947 (Okla. 1990) (citing Restatement (Second) of Torts §§ 586-588)). Attorney also cited one case in which a court extended a "litigation privilege" arising under state defamation law to shield an attorney from liability for violation of the Illinois Eavesdropping Act. *See Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994) ("We believe that, if the matter were presented to them today, the Justices of the Supreme Court of Illinois would conclude that the same policy concerns that animate the common law rule prohibiting defamation actions for statements made in relation to a judicial proceeding ought to apply to actions brought under the Illinois Eavesdropping Statute against attorneys who use or disclose information in a manner intimately associated with an ongoing judicial proceeding.").  Father contends that a litigation privilege arising under state law cannot serve as a defense to Title III liability.

Attorney's assertion of a "litigation privilege" as a defense to Title III liability fails for three reasons.  First, Attorney did not cite, and the Court did not locate, any authority holding that an attorney who uses a communication intercepted in violation of Title III is entitled to some type of privilege or immunity from Title III liability.  Instead, in all cases cited by Attorney, courts applied the litigation privilege as a defense to claims arising solely under state law.  Second, Tenth Circuit law seems to forbid applying "state law or policy" as a defense to Title III liability.  *See Heggy v. Heggy*, 944 F.2d 1537, 1541 n.8 ("We also reject the view that appellant is somehow shielded from liability under the doctrine of interspousal tort immunity.  *The short answer to the immunity defense is that Title III creates a federal cause of action that cannot be barred by any state law or policy.*") (emphasis added).  Finally, courts have allowed Title III claims to proceed against attorneys even when the attorney used the intercepted communication in the course of judicial proceedings.  *See United States v. Wuliger*, 981 F.2d 1497, 1507-08 (6th Cir. 1992) (finding that "[n]othing in the [Ohio Code of Professional Responsibility] authorized the attorney defendant to violate Title III in carrying out his professional duties" in case in which attorney was criminally prosecuted for violation of Title III after using intercepted recordings in divorce proceeding); *Thompson v. Dulaney*, 838 F. Supp. 1535, 1548 (D. Utah 1993) (allowing Title III claims to go to trial against attorney for use of interceptions in judicial proceedings without discussing "litigation privilege").  Thus, the Court is unable to hold that Attorney's actions are shielded from the alleged Title III violations based on a "litigation privilege" that arises in the context of a state-law defamation claim.[11]

_____

[11]     Title III does provide that "good faith reliance on . . . a court warrant or order" is a complete defense to any civil or criminal action.  18 U.S.C. § 2520(d)(1).  However, there is no evidence that Judge Bitting ordered Attorney to use or disclose the communications in the

**D.      Lack of Individual Liability**

Finally, Attorney asserts that she cannot be held individually liable under Title III because she was acting within the scope of her employment for Defendant Law Firm and that she is therefore "protected through the doctrine of respondeat superior and the Oklahoma general corporation statutes which confer limited liability upon her."  (Eagleton and Eagleton, Eagleton, and Harrison Mot. to Dismiss 11.)  Attorney argues that if she was acting within the scope of employment, she cannot be held individually liable under Title III because Oklahoma's Professional Entity Act ("PEA"), Okla. Stat. tit. 18, §§ 801-819, shields a professional from individual liability when that professional acts in the scope of employment.  Attorney cited no case law in support of this argument.

Section 802 of the PEA sets out the statutory policy for permitting the existence of "professional" corporations: "This act shall be so construed as to effectuate its general purpose of making available to professional persons the benefits of the corporate form for the *business aspects of their practices* while preserving the established professional aspects of the personal relationship between the professional person and those he serves."  Okla. Stat. tit. 18, § 802 (emphasis added); *Am. Nat'l Bank and Trust Co. of Shawnee v. Clarke & Van Wagner, Inc.*, 692 P.2d 61, 66 (Okla. Ct. App. 1984).  The PEA makes clear that it *does not* shield professionals from lawsuits brought by clients of the professional, even when the alleged wrongful action was performed in the scope of employment.  *See id.* § 812 ("This act does not alter any law applicable to the relationship between a person rendering professional services and a person receiving such services, including liability arising out of such professional services"); *Am. Nat'l Bank and Trust Co. of Shawnee,* 692 P.2d at

Domestic Case.

67 (holding that individual attorneys and professional corporation were liable for excessive fees retained and owed to client).  Neither the PEA nor Oklahoma case law appears to address a situation such as that presented here – an action brought by a non-client to whom Attorney did not owe a duty of professional care, and Attorney argues that § 812 does not apply because Father was not Attorney's client.

The Court will not decide this issue at the motion to dismiss stage for two reasons.  First, the Court is not convinced, based on its own research, that the PEA shields attorneys from  liability for actions that harm non-clients, s*ee Am. Nat'l Bank and Trust Co. of Shawnee,* 692 P.2d at 67 (stating that "[t]he professional corporation was never intended  as a shield to protect individual attorneys from liability for their actions"), and Attorney has pointed the Court to no case law in support of her position.  Second, even assuming the PEA shields Attorney from individual liability, Father disputes whether Attorney was in fact acting in the scope of her employment for Law Firm in committing the alleged Title III violations.  In his response to Attorney's motion to dismiss, Father argued:  "It is not known whether Mrs. Eagleton acted outside the scope of her employment, but it would be difficult to envision the violation [of] a federal statute as within the scope of one's employment.  It is also not known whether or not the corporation of Eagleton, Eagleton and Harrison has maintained the procedures necessary to shield Mrs. Eagleton from individual liability." (Pl.'s Resp. to Eagleton and Eagleton, Eagleton, and Harrison Mot. to Dismiss 13.)  Although this contradicts the statement in Father's Complaint that Attorney "was an agent and/or employee of [Law Firm] apparently acting within the scope of her agency and/or employment at the time of the alleged violation herein," (Compl. ¶ 40), the Court must construe Father's legal position in its most favorable light.   Despite statements in the Complaint to the contrary, Father now contends that Attorney acted outside the

21

scope of employment.  Accordingly, the Court concludes that Father's allegations are sufficient to state a claim against Attorney in her individual capacity.

## IV.    Defendant McGowen's Motion to Dismiss

Defendant McGowen has submitted evidence beyond the pleadings in support of his motions to dismiss, and Father has also done so in response.  McGowen presented the following evidence in support of his motion to dismiss:  (1) the docket sheet in the Domestic Case (Ex. 1 to McGowen's Mot. to Dismiss); (2) a letter dated June 5, 2006 from McGowen to counsel in the Domestic Case (Ex. 2 to McGowen's Mot. to Dismiss); (3) Order Appointing Parenting Coordinator entered in Domestic Case (Ex. 3 to McGowen's Mot. to Dismiss); (4) a letter dated May 8, 2006 from Father's counsel in the Domestic Case to McGowen (Ex. 1 to McGowen's Reply to Mot. to Dismiss); (5) an Affidavit of Charles McGowen (Ex. 2 to McGowen's Reply to Mot. to Dismiss); and (6) a letter dated February 16, 2006 from Mother to McGowen enclosing transcriptions of certain intercepted communications (Ex. 3 to McGowen's Reply to Mot. to Dismiss).[12]  In his response, Father submitted the following evidence:  (1) Answer of Defendants Jennifer and Mark Jones in the Domestic Case (Ex. A to Pl.'s Resp. to McGowen's Mot. to Dismiss); (2) Order Appointing Parenting Coordinator (Ex. B. to Pl.'s Resp. to McGowen's Mot. to Dismiss); (3) transcript of proceedings held before Judge Bitting on April 12, 2006 in Domestic Case (Ex. D to Pl.'s Resp. to McGowen's Mot. to Dismiss); (4) Journal Entry of Judgment on Motion to Modify Joint Custody Plan entered in Domestic Case (Ex. E. to Pl.'s Resp. to McGowen's Mot. to Dismiss); and (5) Joint Custody Plan (Ex. F to Pl.'s Resp. to McGowen's Mot. to Dismiss).

---

[12]  This exhibit was filed under seal.

22

As a general matter, a motion to dismiss should be converted to a summary judgment motion if a party submits materials outside the pleadings. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1215 (10th Cir. 2007). Notwithstanding this general rule, a district court "may consider documents referred to in the Complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quotation omitted).  The Court finds that certain evidence in the record – including the 2/16/06 correspondence from Mother to McGowen; the 5/8/06 correspondence from Father's counsel in the Domestic Case to McGowen; McGowen's affidavit; and the transcribed phone conversations submitted under seal – constitutes evidence outside the pleadings that is not referred to in the Complaint and that may be subject to dispute.  Due to these submissions, the Court finds it most prudent to convert McGowen's motion to dismiss to one for summary judgment. *See Alvarado*, 493 F.3d at 1215-16.  Before converting the motion to one for summary judgment, the court must "provide the parties with notice so that all factual allegations may be met with countervailing evidence." *See Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005).

Accordingly, the Court hereby converts McGowen's motion to dismiss to one for summary judgment and provides notice of such conversion.  The Court hereby lifts the stay preventing discovery of McGowen and will allow such discovery until the conclusion of the discovery period.[13]

---

[13]     McGowen moved for a stay of any discovery directed to him, arguing that "it is proper for discovery to be stayed pending resolution of the immunity defense."  (Mot. for Protective Order Against Discovery of McGowen 1.)  While this may be generally true, McGowen attached evidence to his motion to dismiss that is outside the pleadings and requires conversion to summary judgment.  This renders McGowen's argument opposing discovery less compelling.  In addition, the question of whether McGowen is entitled to quasi-judicial immunity turns, in part, on whether McGowen exceeded the scope of his appointment as Parenting Coordinator.  *See Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1986) (holding that absolute immunity cannot attach to a quasi-judicial officer if his actions are "clearly and

If either party wishes to submit additional evidence before the Court rules on McGowen's motion for summary judgment, it must do so no later than December 13, 2007 (the dispositive motion deadline).  If neither Father nor McGowen wishes the Court to consider additional evidence before ruling on McGowen's motion for summary judgment, the parties shall submit a joint statement to the Court no later than Friday, November 16, 2007.

## V.    Conclusion

The Motion to Dismiss of Defendants Mark and Jennifer Jones (Doc. 40) is DENIED; Defendants Norma Eagleton and Eagleton, Eagleton, & Harrison, Inc.'s Motion to Dismiss (Doc. 34) is DENIED; and the Motion to Dismiss of Defendant Charles McGowen (Doc. 25) is CONVERTED to one for summary judgment, to be ruled on by the Court at a future date.

The stay of discovery against McGowen (Doc. 51) is LIFTED.  If both parties agree that McGowen's motion for summary judgment is ripe for decision, they shall file a joint statement to the Court no later than November 16, 2007.  If the parties wish to submit additional evidence in support of their positions, they shall do so by means of supplemental briefs to be submitted no later than December 13, 2007.

IT IS SO ORDERED this 5th day of November, 2007.

*Terence Kern*

**TERENCE  KERN**
**UNITED STATES DISTRICT JUDGE**

---

completely outside the scope of [his] jurisdiction"); *Doe v. Hennepin Cty.*, 623 F. Supp. 982, 986 (D. Minn. 1985) ("Court-appointed therapists are entitled to absolute immunity for acts committed *within the scope of their appointments.*") (emphasis added).  The "scope of appointment" question will require at least a limited evidentiary analysis.  Thus, the Court finds that discovery directed to McGowen is appropriate in this case.